No. 26-631

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

RORY VAIL, et al., on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees*,

v.

MICHAEL DUNLEAVY, Governor of Alaska,

*Defendant-Appellant*,

and

JENNIFER WINKELMAN, Commissioner of the Alaska Department of Corrections, TRAVIS WELCH, Department of Corrections Director of Health and Rehabilitation Services, in their official capacities,

*Defendants*.

On Appeal from the U.S. District Court for the District of Alaska
No. 3:25-cv-00086-SAB (Hon. Stanley A. Bastian)

# BRIEF FOR PLAINTIFFS-APPELLEES

David C. Fathi
ACLU NATIONAL PRISON PROJECT
915 15th St., N.W., 7th Floor
Washington, D.C. 20005
*dfathi@aclu.org*
(202) 393-4930

Corene T. Kendrick
ACLU NATIONAL PRISON PROJECT
425 California St., Ste. 700
San Francisco, CA 94104
*ckendrick@aclu.org*
(202) 393-4930

Susan Orlansky
ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Lane, Ste. 207
Anchorage, AK 99503
*sorlansky@acluak.org*
(907) 258-0044

Nicholas Casmier Anway
John A. Freedman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
*nicholas.casmier.anway@arnoldporter.com*
(202) 942-5000

*Counsel for Plaintiffs-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, no Plaintiff-Appellee is a corporation or other artificial entity required to file a corporate disclosure statement.

Dated: July 22, 2026

*/s/ Nicholas Casmier Anway*
Nicholas Casmier Anway

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .................................... i
TABLE OF AUTHORITIES ........................................................ iv
STATEMENT REGARDING ORAL ARGUMENT ........................ viii
INTRODUCTION ............................................................................ 1
JURISDICTIONAL STATEMENT ................................................... 4
STATEMENT OF THE ISSUE ....................................................... 4
PERTINENT LEGAL PROVISIONS ............................................... 5
STATEMENT OF THE CASE ........................................................ 5

A. Plaintiffs Allege Systemwide Deficiencies in the Alaska Department of Corrections' Prison Health Care System ........................................................... 5

B. Plaintiffs Allege That Governor Dunleavy is One of Three Officials Responsible for the Department's Statewide Administration of Prison Health Care .......... 12

C. The District Court Denied the Governor's Motion To Dismiss ........................................................................ 15

SUMMARY OF ARGUMENT ........................................................ 17
STANDARD OF REVIEW .............................................................. 19
ARGUMENT .................................................................................. 20

I. Governor Dunleavy is a Proper Defendant Because Alaska Law Assigns Him "Fairly Direct" Authority Over the Statewide Administration of the Department of Corrections .................. 20

A. *Ex parte Young* Looks to State Law to Determine the Defendant Official's Connection to the Challenged Governmental Conduct ................................................ 22

B. Plaintiffs Challenge the Statewide Administration of the Department's Prison Health Care System ............... 27

C. Alaska Law Assigns the Governor Authority Over the Statewide Administration of the Department.......... 29

D. Governor Dunleavy Is a Proper Defendant Under *Ex parte Young* ........ 37

II. The Governor's Arguments Misstate the *Ex parte Young* Inquiry ........ 46

A. The Governor Improperly Fragments the *Ex parte Young* Analysis ........ 46

B. *Ex parte Young* Does Not Require Plaintiffs To Sue Only the Official With the Most Immediate Operational Authority ........ 48

III. The Complaint Plausibly Alleges the Modest Connection *Ex parte Young* Requires ........ 51

CONCLUSION ........ 56

STATEMENT OF RELATED CASES ........ 57

CERTIFICATE OF COMPLIANCE ........ 58

CERTIFICATE OF SERVICE ........ 59

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1st Westco Corp. v. School District of Philadelphia*,
6 F.3d 108 (3d Cir. 1993) .......................................................... 43

*Air Evac EMS, Inc. v. Texas, Department of Insurance, Division of Workers' Compensation*,
851 F.3d 507 (5th Cir. 2017) ........................................................ 44

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ........................................................ 40

*Armstrong v. Wilson*,
124 F.3d 1019 (9th Cir. 1997) ...................................................... 40

*Aspen Exploration Corp. v. Sheffield*,
739 P.2d 150 (Alaska 1987) ........................................ 31, 32, 39, 41, 49

*Association des Éleveurs de Canards et d'Oies du Québec v. Harris*,
729 F.3d 937 (9th Cir. 2013) .................................................... 41, 42

*Brown v. Plata*,
563 U.S. 493 (2011) ................................................................... 40

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
92 F.3d 1412 (6th Cir. 1996) ........................................................ 44

*Childs v. San Diego Family Hous. LLC*,
22 F.4th 1092 (9th Cir. 2022) ........................................................ 4

*Coalition to Defend Affirmative Action v. Brown*,
674 F.3d 1128 (9th Cir. 2012) ...................................................... 46

*Coleman v. Newsom*,
131 F.4th 948 (9th Cir. 2025) ....................................................... 40

*Confederated Tribes & Bands of Yakama Indian Nation v. Locke*,
176 F.3d 467 (9th Cir. 1999) .................................................... 41, 50

*Doyle v. Hogan*,
1 F.4th 249 (4th Cir. 2021) .................................................................. 44

*Eaves v. Polis*,
167 F.4th 1304 (10th Cir. 2026) ........................................ 38, 39, 51, 55

*Forward, Inc. v. Macomber*,
178 F.4th 470 (9th Cir. 2026) ................................................ 23, 43, 51

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992)............................................................... 40

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
707 F.3d 1114 (9th Cir. 2013)............................................................... 24

*Hoptowit v. Spellman*,
753 F.2d 779 (9th Cir. 1985)................................................................. 40

*Jackson v. Wright*,
82 F.4th 362 (5th Cir. 2023) .......................................................... 38, 50

*Jordan v. Gardner*,
986 F.2d 1521 (9th Cir. 1993) (en banc)............................................... 40

*Kitchen v. Herbert*,
755 F.3d 1193 (10th Cir. 2014)....................................................... 38, 49

*L.A. Cnty. Bar Ass'n v. Eu*,
979 F.2d 697 (9th Cir. 1992).................................. 16, 18, 20, 23, 25, 37

*Los Angeles Branch NAACP v. Los Angeles Unified School District*,
714 F.2d 946 (9th Cir. 1983)................................................................. 42

*Luckey v. Harris*,
860 F.2d 1012 (11th Cir. 1988)............................................................. 38

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) .............3, 20, 23-24, 26, 32, 38-39, 45, 47, 49, 51, 53, 55

*Nat'l Audubon Soc'y, Inc. v. Davis*,
307 F.3d 835 (9th Cir. 2002)........................................................... 19, 43

*Nat'l Audubon Soc'y, Inc. v. Davis*,
312 F.3d 416 (9th Cir. 2002) .................................................. 19

*Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*,
122 F.4th 825 (9th Cir. 2024) .......................... 3, 20, 23, 24, 26, 47, 49

*Planned Parenthood of Idaho, Inc. v. Wasden*,
376 F.3d 908 (9th Cir. 2004) ................................ 24, 26, 32, 37, 45, 49

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) ............................................................ 4

*R.W. v. Columbia Basin Coll.*,
77 F.4th 1214 (9th Cir. 2023) ............................................ 51, 53

*Shell Oil Co. v. Noel*,
608 F.2d 208 (1st Cir. 1979) .................................................. 43

*Taylor v. Alaska Legislative Affairs Agency*,
529 P.3d 1146 (Alaska 2023) ................................. 32, 33, 41, 49

*United States v. Abbott*,
85 F.4th 328 (5th Cir. 2023) .................................................. 44

*Vail v. Dunleavy*,
814 F. Supp. 3d 997 (D. Alaska 2025) ......................................... 4

*Valdivia v. Schwarzenegger*,
599 F.3d 984 (9th Cir. 2010) .................................................. 40

*Virginia Off. for Prot. & Advoc. v. Stewart*,
563 U.S. 247 (2011) ...................................................... 22, 23

*Ex parte Young*,
209 U.S. 123 (1908) ................................... 3, 20, 23, 24, 25, 38

**Constitutional Provisions**

U.S. Const. Amend. XI ............................................................ 22

Alaska Const. art. III, § 16 ..................................................... 21, 30, 48

Alaska Const. art. III, § 23 ........................................ 21, 30, 48

Alaska Const. art. III, § 24 ........................................ 21, 30, 41, 48

Alaska Const. art. III, § 25 ........................................ 21, 30, 41, 48

**Statutes and Regulations**

28 U.S.C. § 1291 ........................................ 4

28 U.S.C. § 1331 ........................................ 4

28 U.S.C. § 1343(a)(3) ........................................ 4

42 U.S.C. § 1983 ........................................ 4

Alaska Stat. § 33.30.011(a)(1) ........................................ 33

Alaska Stat. § 33.30.011(a)(3)(B) ........................................ 33

Alaska Stat. § 33.30.011(a)(4)(A) ........................................ 33

Alaska Stat. § 44.28.010 ........................................ 33

Admin. Order No. 77 (July 12, 1983),
https://perma.cc/MCB8-94JH ........................................ 13, 22, 34, 39, 45, 48, 54

Admin. Order No. 138 (Sept. 1, 1993),
https://perma.cc/BP93-7BZB ........................................ 13, 22, 35, 39, 45, 48, 54

Admin. Order No. 207 (Jan. 22, 2003),
https://perma.cc/CG8Q-BHH4 ........................................ 13, 22, 34, 39, 45, 48, 54

Admin. Order No. 283 (Feb. 16, 2017),
https://perma.cc/AWX2-AGX4 ........................................ 13, 22, 35, 39, 45, 48, 54

**Other Authorities**

State of Alaska Legislative Affairs Agency, *Handbook on Alaska State Government* (2025),
https://perma.cc/6BKA-SLCM ........................................ 31

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellees Rory Vail; Jim Adams; Christopher Nickalaskey; Clarence Shirley; Stephanie Olrun; Nick Ephamka, Jr.; Anthony Gilliam; Gavin Christiansen; Jeremy Whitlow; Naomi Holt, on behalf of themselves and all others similarly situated, respectfully request oral argument. This interlocutory appeal presents an important question concerning the scope of the *Ex parte Young* exception to Eleventh Amendment immunity. Oral argument would assist the Court in resolving the issue.

## INTRODUCTION

This interlocutory appeal asks whether Alaska Governor Michael Dunleavy is a proper defendant under *Ex parte Young* in an action seeking prospective declaratory and injunctive relief challenging the statewide administration of Alaska's prison health care system. The answer is yes. Because Alaska law assigns Governor Dunleavy "fairly direct" authority over the state's correctional system, the district court correctly concluded that he is a proper defendant. This Court should affirm.

Plaintiffs-Appellees ("Plaintiffs") allege that statewide policies and practices governing the Department of Corrections' (the "Department" or "DOC") provision of medical, mental health, and dental care are subjecting incarcerated persons to an ongoing risk of serious harm. The Alaska Constitution and Alaska Supreme Court jurisprudence place each principal executive department under the Governor's supervision, authorize him to reorganize executive functions, empower him to direct the official actions of principal department heads and ensure compliance with constitutional mandates, and provide that principal department heads serve at his pleasure. Together, those constitutional powers assign

the Governor authority over the statewide administration of DOC. For more than four decades, Alaska governors of both parties have exercised that authority through Administrative Orders reorganizing the Department, directing statewide correctional policy, commissioning systemwide reviews of prison operations, and ordering statewide health-care initiatives. Plaintiffs allege that Governor Dunleavy has failed to exercise those constitutional powers and duties in a manner consistent with the Eighth and Fourteenth Amendments. Those allegations bring this case squarely within *Ex parte Young*.

The Governor's counterarguments ask the wrong questions, so they reach the wrong result. First, rather than examining Alaska's constitutional allocation of authority over the challenged governmental conduct, he fragments his constitutional powers into isolated provisions and asks whether each, standing alone, would satisfy *Ex parte Young*. But neither *Ex parte Young* nor this Court's precedents prescribe such a piecemeal inquiry. Second, the Governor asks whether another official exercises more immediate responsibility than he does, and implies that he cannot be sued if he can find one. But *Ex parte Young* asks only whether the defendant official possesses "some connection" under state

law—not whether another official has ***more***. 209 U.S. 123, 157 (1908). Neither argument reflects the question presented, which is simply: whether Alaska law, taken as a whole, gives Governor Dunleavy a "fairly direct" relationship to the challenged statewide administration of DOC prison health care. It unequivocally does.

And the Court need not define the outer limits of Governor Dunleavy's constitutional authority to agree. This appeal arises from the denial of a Rule 12(b)(6) motion. Plaintiffs must plausibly allege—not prove—the "modest" connection that *Ex parte Young* requires. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 842 (9th Cir. 2024) (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 904 (9th Cir. 2022)). The Complaint easily clears that bar by alleging that Governor Dunleavy is responsible for the oversight and operation of the DOC, that he has long been on notice of systemic constitutional deficiencies in Alaska's prison health care system, and that he has failed to exercise his authority to remedy them. The district court thus correctly denied the Governor's motion to dismiss, and this Court should affirm.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) over Plaintiffs' claims arising under the Eighth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983. On December 30, 2025, the district court denied Defendants' motion to dismiss, including Governor Dunleavy's motion to dismiss on Eleventh Amendment immunity grounds. ER_9–11 (Order Den. Defs.' Mot. to Dismiss).[1] Governor Dunleavy filed his notice of interlocutory appeal on January 28, 2026. ER_80–81 (Notice of Appeal).

This Court has jurisdiction under 28 U.S.C. § 1291 because an order denying a state official's claim of Eleventh Amendment immunity is immediately appealable under the collateral-order doctrine. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993); *Childs v. San Diego Family Hous. LLC*, 22 F.4th 1092, 1095–96 (9th Cir. 2022).

## STATEMENT OF THE ISSUE

Whether the district court correctly held that Governor Dunleavy is a proper defendant under *Ex parte Young* where Plaintiffs challenge

[1] Published at *Vail v. Dunleavy*, 814 F. Supp. 3d 997 (D. Alaska 2025).

the statewide administration of the Alaska Department of Corrections' prison health care system and Alaska's constitution, jurisprudence, and longstanding executive practice assign the Governor authority over that statewide executive system.

## PERTINENT LEGAL PROVISIONS

All applicable statutes are contained in the addendum of the Governor of Alaska's Opening Brief ("OB"). (C.A. Doc. 11-2).

## STATEMENT OF THE CASE

### A. Plaintiffs Allege Systemwide Deficiencies in the Alaska Department of Corrections' Prison Health Care System

Plaintiffs are ten individuals incarcerated in Alaska Department of Corrections facilities who filed this putative class action on behalf of themselves and "all persons who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the Alaska DOC." ER_13 (Compl. ¶ 3). Plaintiffs allege that the Department's prison health care system is constitutionally deficient at every stage of the health care process and exposes incarcerated persons to "a substantial risk of serious harm." ER_13 (Compl. ¶ 1); *see also* ER_13, ER_74–75 (Compl. ¶¶ 2–3, 273–78). Plaintiffs further allege that they are "entirely dependent on Defendants" for their medical,

mental health, and dental care (collectively "health care"). ER_13 (Compl. ¶ 1).

The Complaint alleges that "[c]onstitutionally inadequate health care is systemic at every stage of the health care process." ER_13 (Compl. ¶ 2). Those systemic deficiencies include "inadequate screening of serious health conditions"; "delay[s] or denial[s] [of] access to clinicians, medications, medical devices, [] medical supplies, [] specialty care[,] [and] emergency care"; denials of access to necessary medical care "for disciplinary reasons and based on criminal case status"; chronic understaffing; "a grossly inadequate medical records system"; and failures to "provide the full array of services necessary to meet minimum constitutional standards of care." ER_13. Plaintiffs allege that these deficiencies arise not from isolated mistakes by individual health care providers, but from statewide "policies and practices" governing the DOC's provision of prison health care. ER_13 (Compl. ¶¶ 2–3).

The Complaint further alleges that these statewide policies and practices govern a single, unified correctional system. DOC operates thirteen correctional facilities housing approximately 4,400 incarcerated persons statewide. ER_41 (Compl. ¶¶ 108–09). Plaintiffs allege that "[a]ll

statewide health care policies are centrally promulgated, disseminated, and enforced by the central headquarters of DOC under the auspices of" the Defendants here: Governor Dunleavy, DOC Commissioner Jennifer Winkelman, and DOC Director of Health and Rehabilitation Services ("HARS") Travis Welch. ER_13, ER_39 (Compl. ¶¶ 3, 100). They further allege that Defendants' policies and practices uniformly subject incarcerated people throughout that statewide system to constitutionally inadequate health care. ER_40–43 (Compl. ¶¶ 104–15).

The Complaint alleges that Defendants have long been aware of these systemic deficiencies. Plaintiffs point to increasing deaths in DOC custody; multiple wrongful-death actions alleging inadequate health care;[2] a 2015 gubernatorial review identifying widespread failures in medical and mental health care; repeated reports by the Alaska State Ombudsman documenting deficiencies in chronic-disease management and dental care; "hundreds of complaints about DOC's failure to provide

[2] These "include but are not limited to" cases arising from deaths by "suicide" and "severe brain injuries [sustained] in a suicide attempt"; "malnutrition, dehydration, renal failure and heart dysrhythmia after DOC medical staff failed to follow protocol for detox"; and "meningitis following DOC's failure to treat an ear infection." ER_14–15 (Compl. ¶ 4(b)).

adequate health care" received through DOC's grievance system; and a 2010 report from the DOC and ACLU of Alaska concluding that "DOC had serious deficiencies in medical care, including inadequate staffing, lack of prompt or adequate treatment, suicide prevention protocols at odds with national standards, and under-treatment of mental illness." ER_14–16 (Compl. ¶¶ 4(a)–(g)). Plaintiffs allege that, despite these repeated warnings, Defendants have "failed to remedy" the challenged conditions, ER_14 (Compl. ¶ 4), and "are deliberately indifferent to the substantial risk of serious harm caused by these systemic health care deficiencies," ER_41 (Compl. ¶ 107).

The experiences of the named plaintiffs illustrate the systemic deficiencies alleged throughout the Complaint. For example, Plaintiff Rory Vail, a pretrial detainee, alleges that DOC has repeatedly denied surgical evaluation for a worsening hernia "on the ground that the criminal case against him is not yet resolved" and delayed necessary dental care until several teeth deteriorated beyond repair, putting him at "risk of severe complications including infection, sepsis, and death." ER_17–18, ER_67–68 (Compl. ¶¶ 7–15, 242).

Similarly, Plaintiff Stephanie Olrun alleges that failures to monitor and manage her diabetes culminated in diabetic ketoacidosis,[3] a diabetic coma, acute kidney injury, and a six-day hospitalization. ER_23–24, ER_53, ER_55 (Compl. ¶¶ 32–38, 166, 178). Medical staff "failed to provide blood sugar checks" for several weeks after "she presented to the DOC clinic with blurry vision, heartburn, numbness and stabbing pain to her right knee, [] bilateral calf cramping," and "dangerously elevated blood sugar," ER_23 (Compl. ¶ 34), and "did not check her blood sugar levels" in the days preceding her hospitalization, "even while she remained in her cell incapacitated by pain," ER_23–24 (Compl. ¶¶ 35–36).

Another Plaintiff, Nick Ephamka, alleges that Defendants delayed cataract surgery for years despite acknowledging that he suffered from dense bilateral cataracts causing profound visual impairment. ER_25–26, ER_54 (Compl. ¶¶ 39–47, 174). "Because Defendants have failed to provide him with the needed ophthalmology and chronic care, his vision

[3] Diabetic ketoacidosis is "a life-threatening complication of poorly controlled diabetes." ER_24 (Compl. ¶ 36).

has become so impaired that he cannot clearly see the food on his plate, let alone safely navigate the prison environment." ER_25 (Compl. ¶ 40).

The other named plaintiffs likewise allege seriously deficient treatment for serious mental illness, chronic pain, dental disease, substance-use disorders, gastrointestinal disease, orthopedic injuries, and other medical conditions. *See generally* ER_17–33 (Compl. ¶¶ 7–80).

Plaintiffs allege that these injuries stem from "systematic deficiencies" throughout the operation of DOC's health care system—not isolated treatment decisions. ER_43–71 (Compl. ¶¶ 116–257). The Complaint challenges statewide policies governing staffing, intake screening, continuity of care, access to clinicians and specialists, emergency response, chronic-disease management, medication administration, substance-use treatment, medical records, dental care, mental health care, and the grievance process. *See* ER_43–73 (Compl. ¶¶ 116–272). Indeed, allegations of "Systemic Deficiencies in the Provision of Adequate Health Care" alone span nearly 150 paragraphs of the Complaint. ER_43–71 (Compl. ¶¶ 116–257). Plaintiffs maintain that these policies and practices collectively expose all incarcerated persons

in DOC custody to an ongoing risk of serious harm. ER_74–78 (Compl. ¶¶ 273–80).

Consistent with those allegations, Plaintiffs seek exclusively prospective declaratory and injunctive relief on behalf of themselves and a class of all persons incarcerated in Defendants' custody. They ask the district court to declare Defendants' "acts, omissions, policies, and practices" unconstitutional and to order Defendants "to develop and implement . . . a plan to eliminate the substantial risk of serious harm" resulting from Defendants' inadequate health care. ER_75–76 (Compl. ¶ 280(b)–(d)). The requested plan would establish systemwide requirements governing staffing, timely access to care, screening, medication and medical supplies, emergency response, chronic-disease management, mental health treatment, dental care, and quality assurance. ER_76–78 (Compl. ¶ 280(d)). Plaintiffs further request that the district court retain jurisdiction until Defendants have fully complied with any remedial order. ER_78 (Compl. ¶ 280(f)). Plaintiffs seek that prospective relief against Governor Dunleavy, Commissioner Winkelman, and Director Welch in their official capacities, whom they

allege are each responsible for the administration of health care in the Department's prisons. ER_39–40 (Compl. ¶¶ 101–03).

### B. Plaintiffs Allege That Governor Dunleavy is One of Three Officials Responsible for the Department's Statewide Administration of Prison Health Care

Consistent with their theory that the challenged constitutional violations arise from statewide policies and practices, Plaintiffs sue three Alaska officials in their official capacities: Governor Michael Dunleavy, Commissioner Winkelman, and Director Travis Welch. ER_39–40 (Compl. ¶¶ 101–03). The Complaint alleges that each member of this triumvirate exercises distinct but complementary responsibilities within the statewide administration of DOC and its prison health care system.

More specifically:

- **Governor Dunleavy**, as Alaska's chief executive, "is responsible for the oversight and operation of DOC, including appointing the Commissioner of DOC, and proposing the budget for DOC." ER_39 (Compl. ¶ 101). Citing article III, section 25 of the Alaska Constitution and Alaska Statutes chapters 37.07 and 44.19, the Complaint further alleges that Governor Dunleavy "bears ultimate responsibility for providing all people in DOC custody with constitutional conditions of confinement, including adequate health care." ER_39. The Complaint likewise alleges that Alaska governors have exercised those responsibilities in practice. For example, according to the Complaint, then-Governor Walker appointed a Special Assistant to conduct a comprehensive administrative review of DOC following a series of prisoner deaths in custody, which identified systemic deficiencies in prison medical

and mental health care and recommended statewide reforms. ER_15 (Compl. ¶ 4(c)). As discussed below, Alaska governors have repeatedly exercised comparable authority through Administrative Orders reorganizing the Department, directing correctional policy, and addressing statewide prison administration. *See* Admin. Order Nos. 77, 138, 207, 283, *infra*, at 33–36.

- **Commissioner Winkelman** "is responsible for establishing, monitoring, and enforcing overall operations, policies, and practices of DOC," including "the provision of constitutionally adequate health care for all people committed to its custody." ER_40 (Compl. ¶ 102). The Complaint further alleges that she is responsible for decisions regarding "staff hiring, supervision, deployment, and training" affecting health care delivery and for establishing programs to "maintain health" and provide "necessary medical services," including "medical, psychological, and psychiatric care." ER_40 (quoting 22 AAC 05.121).

- **Director Welch** exercises responsibility for DOC's statewide health services. As Director of HARS, Welch "is responsible for establishing, monitoring, and enforcing system-wide health care policies and practices for all DOC facilities" and for supervising the provision of "quality, accessible, and timely health care services" throughout the Department. ER_40 (Compl. ¶ 103) (quoting Alaska DOC Policy 807.01).

The Complaint repeatedly returns to Governor Dunleavy's role, together with those of Commissioner Winkelman and Director Welch, in the statewide administration of Alaska's prison health care system. In addition to individually alleging each Defendant's respective responsibilities, Plaintiffs define their proposed class by reference to the "medical, mental health, and dental care policies and practices of the Alaska DOC." ER_13 (Compl. ¶ 3). And they further allege that "[a]ll

statewide health care policies are centrally promulgated, disseminated, and enforced by the central headquarters of DOC under the auspices of Defendants Dunleavy, Winkelman, and Welch." ER_39 (Compl. ¶ 100). The Complaint then alleges that "[b]y their policies and practices described in this Complaint, Defendants DUNLEAVY, WINKELMAN and WELCH subject all Plaintiffs and the proposed Plaintiff Class to a substantial risk of serious harm from inadequate health care." ER_74 (Compl. ¶ 273); *see also* ER_74–75 (Compl. ¶ 276) (similar). Plaintiffs likewise allege that "[d]efendants have been and are aware of all of the deprivations complained of herein, and are deliberately indifferent to the substantial risk of serious harm posed by these deprivations." ER_74 (Compl. ¶ 274); *see also* ER_74–75 (Compl. ¶ 276).

Accordingly, the Complaint alleges that Governor Dunleavy, Commissioner Winkelman, and Director Welch each bear direct responsibility for the statewide administration of the DOC's prison health care system. On the basis of those allegations, Plaintiffs seek prospective declaratory and injunctive relief against each defendant in his or her official capacity. *See* ER_39–40, ER_75–78 (Compl. ¶¶ 101–03, 280).

### C. The District Court Denied the Governor's Motion To Dismiss

Plaintiffs filed their Complaint on May 1, 2025. On July 14, 2025, Defendants jointly moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* SER_63–64, 79–82 (Defs.' Mot. to Dismiss). In addition to arguing that Plaintiffs' claims were foreclosed by claim preclusion, issue preclusion, jurisdictional defects, abstention, and various policy arguments, Governor Dunleavy separately argued that the Eleventh Amendment required his dismissal because he lacked the connection to the challenged conduct required by *Ex parte Young*. SER_64–82. Specifically, he argued that Alaska's Constitution confers on the Governor only generalized supervisory authority over executive departments, and that responsibility for the operation of DOC and the provision of prison health care rests instead with the Commissioner of Corrections. SER_79–82.

Plaintiffs maintained that "the Governor has a 'fairly direct' connection to enforcing [] prison conditions within the Alaska Department of Corrections," SER_37 (Pls.' Opp. to Defs. Mot. to Dismiss), because Alaska law assigns him "the authority—indeed, the *legal*

*responsibility*—to address the unconstitutional prison conditions" alleged in the Complaint, SER_41.

On December 30, 2025, after briefing and oral argument, the district court denied the motion to dismiss in its entirety and rejected Governor Dunleavy's sovereign-immunity argument. *See* ER_3–11 (Order Den. Defs.' Mot. to Dismiss). The court recognized that *Ex parte Young* requires more than "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision." ER_10 (quoting *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)). But in light of the allegations in the Complaint and briefing, the court concluded that Governor Dunleavy "has a relevant role in the administration of the Alaska prison system that goes beyond a generalized duty to enforce the state law." ER_10–11. In reaching that conclusion, the court relied on Plaintiffs' allegations concerning Alaska's constitutional structure and the historical exercise of gubernatorial authority over the DOC, including Administrative Orders reorganizing the Department and directing statewide correctional policy and health care initiatives. ER_10. The court therefore held that the *Ex parte Young* exception to Eleventh Amendment

immunity applies and denied Governor Dunleavy's motion to dismiss. ER_10–11.

Governor Dunleavy filed this interlocutory appeal from the denial of Eleventh Amendment immunity. ER_80–81 (Notice of Appeal). No other aspect of the district court's order is before this Court.

## SUMMARY OF ARGUMENT

**I.** *Ex parte Young* requires the Court to identify the governmental conduct challenged and determine whether state law assigns the defendant official the requisite connection to that conduct. Plaintiffs challenge the statewide administration of Alaska's prison health care system. Alaska law, in turn, assigns Governor Dunleavy authority over the organization, leadership, and administration of the Department of Corrections, through which Alaska's prison health care system is administered. For more than four decades, Alaska governors have exercised that authority by reorganizing the Department, directing statewide correctional policy, and addressing prison health care through gubernatorial Administrative Orders and other executive action. Because the Complaint alleges that Governor Dunleavy has failed to exercise those constitutional powers and duties in a manner consistent with the

Eighth and Fourteenth Amendments, he is a proper defendant under *Ex parte Young*.

**II.** The Governor's arguments misstate the *Ex parte Young* inquiry. His opening brief fragments Alaska's constitutional allocation of executive authority into discrete powers and argues that each power, viewed in isolation, does not show the requisite connection to the governmental conduct challenged here. But *Ex parte Young* and this Court's precedents do not contemplate this piecemeal analysis. The operative question is simple: whether state law assigns the defendant official a "fairly direct" legal relationship to the challenged governmental conduct. *Eu*, 979 F.2d at 704.

Nor does *Ex parte Young* require plaintiffs to identify the single official exercising the ***most*** immediate operational authority over that conduct. The Governor cites no decision adopting such an exclusivity rule. And to the contrary, both this Court and other courts have repeatedly recognized that multiple executive officials may simultaneously satisfy *Ex parte Young* where each possesses an independent legal connection to the challenged governmental conduct.

Accordingly, the Governor's counterarguments do not disturb the decision below.

**III.** The Court can affirm on the narrow ground that the Complaint plausibly alleges the modest connection *Ex parte Young* requires. This interlocutory appeal arises from the denial of a Rule 12(b)(6) motion, and Plaintiffs must allege—not prove—the facts establishing the Governor's connection to the challenged governmental conduct. The Complaint does so by alleging that Governor Dunleavy is responsible for the oversight and operation of the Department, received repeated notice of longstanding systemic constitutional deficiencies in the Department's prison health care system, and failed to exercise the authority that Alaska law assigns him to remedy those ongoing violations. At a minimum, those allegations are sufficient to survive dismissal, and the district court therefore correctly denied the Governor's motion to dismiss.

## STANDARD OF REVIEW

This Court "review[s] de novo whether Eleventh Amendment immunity applies." *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846 (9th Cir. 2002), *op. amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002). Because this appeal arises from the denial of a Rule 12 motion, the

Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) (citation omitted).

## ARGUMENT

### I. GOVERNOR DUNLEAVY IS A PROPER DEFENDANT BECAUSE ALASKA LAW ASSIGNS HIM "FAIRLY DIRECT" AUTHORITY OVER THE STATEWIDE ADMINISTRATION OF THE DEPARTMENT OF CORRECTIONS

This appeal concerns the proper application of *Ex parte Young* to an action challenging the ongoing administration of Alaska's prison health care system. Plaintiffs do not assert that a governor may be sued whenever executive action is challenged, nor do they contend that general executive authority alone satisfies *Ex parte Young*. Rather, Plaintiffs contend that under Alaska law and the Alaska Governor's office's history with the Department of Corrections, he bears sufficient responsibility for the challenged conduct to be held accountable through this litigation. *See Ex parte Young*, 209 U.S. at 157; *Eu*, 979 F.2d at 704–05; *Labrador*, 122 F.4th at 842.

That principle resolves this appeal. As detailed above, Plaintiffs challenge the statewide policies and practices through which the DOC administers constitutionally required medical, dental, and mental health

care. The Complaint alleges that those statewide policies and practices are "centrally promulgated, disseminated, and enforced by the central headquarters of DOC under the auspices of Defendants Dunleavy, Winkelman, and Welch." ER_36–37, 39 (Compl. ¶¶ 90, 100). It further alleges that Governor Dunleavy is responsible for the "oversight and operation of DOC" and "bears ultimate responsibility for providing all people in DOC custody with constitutional conditions of confinement, including adequate health care." ER_39–40 (Compl. ¶ 101).

Those allegations are consistent with Alaska's constitution, jurisprudence, and longstanding executive practice, which assign the Governor continuing responsibility for the statewide administration of Alaska's DOC. Alaska's Constitution places every principal executive department under the Governor's supervision, authorizes the Governor to reorganize executive functions, empowers the Governor to compel executive officers to comply with constitutional mandates, and makes principal department heads serve at the Governor's pleasure. Alaska Const. art. III, §§ 16, 23–25. Since the 1980s, Alaska governors have repeatedly exercised those constitutional powers by reorganizing DOC, directing statewide correctional policy, and issuing Administrative

Orders governing prison operations and prisoner health care. *See* Admin. Order Nos. 77, 138, 207, 283, *infra*, at 33–36. Those responsibilities give Governor Dunleavy a "fairly direct" connection to the challenged statewide administration of Alaska's prison health care system. And Plaintiffs seek prospective relief precisely because they allege that he has failed to exercise his authority in a manner consistent with federal law.

The Governor's principal cases involve different governmental conduct and different allocations of authority under the laws of different states. Properly understood, they apply the same *Ex parte Young* inquiry and reinforce the conclusion that Governor Dunleavy is a proper defendant here.

### A. *Ex parte Young* Looks to State Law to Determine the Defendant Official's Connection to the Challenged Governmental Conduct

The Eleventh Amendment ordinarily bars suits against States and state officials acting in their official capacities. *See* U.S. Const. amend. XI; *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011). Under the longstanding exception recognized in *Ex parte Young*, however, a plaintiff may seek prospective declaratory or injunctive relief

against a state official to remedy an ongoing violation of federal law. *Stewart*, 563 U.S. at 254–55; *Ex parte Young*, 209 U.S. at 155–57.

Applying *Ex parte Young* first requires the Court to identify the governmental conduct challenged. *See Eu*, 979 F.2d at 704; *Ex parte Young*, 209 U.S. at 157. The Court next examines state law to determine whether the defendant official has a "fairly direct" connection to that conduct—that is, whether state law assigns the official a sufficiently relevant role in the alleged "ongoing violation of federal law." *Forward, Inc. v. Macomber*, 178 F.4th 470, 473 (9th Cir. 2026); *see also Eu*, 979 F.2d at 704; *Ex parte Young*, 209 U.S. at 157.

This connection requirement is "modest." *Labrador*, 122 F.4th at 842 (quoting *Mecinas*, 30 F.4th at 904). Although "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit," *Eu*, 979 F.2d at 704, neither the Supreme Court nor this Court has required the defendant official to possess exclusive or primary authority over the challenged governmental conduct, or personal involvement in the challenged acts, *see Ex parte Young*, 209 U.S. at 157 (Attorney General need only have "some connection" to enforcement);

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919–20 (9th Cir. 2004) (Attorney General remained a proper defendant despite county prosecutors' primary enforcement authority); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (*Ex parte Young* does not require the defendant's "personal involvement in the acts or omissions constituting the alleged constitutional violation"). Rather, the Court asks only whether state law gives the official "a relevant role that goes beyond 'a generalized duty to enforce state laws or general supervisory power.'" *Labrador*, 122 F.4th at 842 (quoting *Mecinas*, 30 F.4th at 903–04); *accord Wasden*, 376 F.3d at 919.

In *Ex parte Young*, the plaintiffs challenged the enforcement of Minnesota's railroad-rate statutes as unconstitutional, sought prospective relief to prevent their enforcement, and named the Minnesota Attorney General as a defendant. *Ex parte Young*, 209 U.S. at 127–31. The Court concluded that the Attorney General was a proper defendant because he had "***some*** connection with the enforcement of the act," namely, Minnesota law authorized him to institute proceedings enforcing the challenged railroad-rate statutes. *Id.* at 157–61 (emphasis added). But the Supreme Court explained that officials who possess "no

duty at all with regard to the act" cannot be made defendants merely because they occupy high executive office. *Id.* at 157–59.

The Ninth Circuit has consistently applied the same framework. In *Eu*, the plaintiffs challenged California's statutory allocation of superior court judgeships and named the Governor and Secretary of State as defendants. 979 F.2d at 699–701. The Court concluded that both officials possessed "fairly direct" responsibilities for implementing the challenged legislation: the Governor "appoint[ed] judges to any newly-created judicial positions," and the Secretary of State "certif[ied] subsequent elections for those positions." *Id.* at 704. Unlike *Ex parte Young*, the *Eu* Court did not consider enforcement authority because the challenged statute was "simply not the type [] that gives rise to enforcement proceedings." *Id.* Instead, the Court focused on whether state law assigned each defendant official a sufficiently direct role in the statute's implementation.

More recent Ninth Circuit decisions reinforce that understanding. In *Mecinas*, the plaintiffs challenged Arizona's Ballot Order Statute—which prescribed the order in which candidates would appear on Arizona ballots—seeking prospective relief against the Secretary of State.

30 F.4th at 894–96. This Court held that the Secretary of State was a proper defendant because Arizona law assigned her "clear duties" extending beyond "a generalized duty to enforce state law or general supervisory power" in administering the challenged election laws. *Id.* at 903–04 (quoting *Wasden*, 376 F.3d at 919). In particular, the Court emphasized the Secretary's duty to "oversee ballot production" by "promulgating [an] Election Procedures Manual" that "county officials have no discretion to disregard" as they designed ballots. *Id.* Likewise, in *Labrador* and *Wasden*, this Court held that Idaho's Attorney General was a proper defendant in challenges to Idaho abortion laws because state law independently authorized him to enforce the challenged statutes, even though other officials also exercised enforcement authority. *Labrador*, 122 F.4th at 842–43; *Wasden*, 376 F.3d at 919–20. In each case, the Court identified the governmental conduct challenged, then examined state law to determine whether the defendant official has the requisite connection to that conduct.

### B. Plaintiffs Challenge the Statewide Administration of the Department's Prison Health Care System

At the first step of the *Ex parte Young* inquiry, Plaintiffs challenge the statewide administration of Alaska's constitutionally required prison health care system. Plaintiffs allege that the Department's statewide "medical, mental health, and dental care policies and practices" subject all persons in DOC custody to an ongoing risk of serious harm and seek prospective relief requiring Defendants to develop and implement a statewide remedial plan addressing those policies and practices. ER_13, ER_74–78 (Compl. ¶¶ 2–3, 273–80). Both the Complaint's allegations and requested relief confirm that Plaintiffs challenge the operation of this statewide executive system.

***First***, the Complaint defines the challenged governmental conduct as the statewide policies and practices governing DOC's provision of prison health care. Plaintiffs seek to represent a class consisting of "all persons who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the Alaska DOC." ER_13 (Compl. ¶ 13). The Complaint further alleges that "all statewide health care policies are centrally promulgated, disseminated, and enforced by the central headquarters of DOC under the auspices of

Defendants Dunleavy, Winkelman, and Welch." ER_39 (Compl. ¶ 100). The Complaint alleges that "[c]onstitutionally inadequate health care is systemic at every stage of the health care process," ER_13 (Compl. ¶ 2), and attributes those systemic deficiencies to statewide policies governing staffing, access to clinicians and specialty care, emergency response, medication administration, chronic-disease management, mental health treatment, dental care, medical records, quality assurance, and the grievance process, ER_43–73 (Compl. ¶¶ 116–272). Plaintiffs allege that Defendants' "policies and practices" subject all members of the proposed class to "a substantial risk of serious harm from inadequate health care." ER_74 (Compl. ¶ 273). Taken together, those allegations identify the challenged governmental conduct as the statewide administration of Alaska's prison health care system, through which Plaintiffs allege Defendants are violating the Eighth and Fourteenth Amendments.

***Second***, the relief requested confirms the statewide nature of the challenge. Plaintiffs ask the district court to order Defendants "to develop and implement . . . a plan to eliminate the substantial risk of serious harm suffered by [the plaintiff class] as a result of Defendants' inadequate medical, mental health, and dental care." ER_76 (Compl. ¶

280(d)). The proposed remedial plan would govern staffing, access to care, screening, medication administration, emergency response, chronic-disease management, mental health treatment, dental care, quality assurance, and other statewide operational requirements. ER_76–78 (Compl. ¶ 280(d)(i)–(ix)). Indeed, Defendants themselves acknowledged that Plaintiffs seek "system-wide injunctive and declaratory relief." SER_67 (Defs.' Mot. to Dismiss). The parties therefore agree about the nature of the governmental conduct at issue; they disagree only about which officials have authority over that conduct under Alaska law.

### C. Alaska Law Assigns the Governor Authority Over the Statewide Administration of the Department

Three related sources establish Alaska's allocation of authority over the statewide administration of the Department of Corrections: the Alaska Constitution, the Alaska Supreme Court's interpretation of its Constitution, and the Governor's longstanding executive practice. Together, they demonstrate that Alaska law assigns the Governor powers and duties over the Department that extend well beyond generalized supervisory authority and encompass the DOC's administration of prison health care.

Turning first to the Alaska Constitution, Article III, section 24 provides that "[e]ach principal department shall be under the supervision of the governor." Alaska Const. art. III, § 24. Article III, section 23 further authorizes the Governor to make operational "changes in the organization of the executive branch or in the assignment of functions among its units which he considers necessary for efficient administration." *Id.* § 23. Article III, section 16 provides that "[t]he governor shall be responsible for the faithful execution of the laws" and authorizes the Governor to "enforce compliance with any constitutional or legislative mandate" by any "department[] or agency of the State." *Id.* § 16. Finally, article III, section 25 places the heads of principal departments under the Governor's continuing control through gubernatorial appointment and removal. *Id.* § 25. Read together, these provisions establish that Alaska's Constitution assigns Governor Dunleavy continuing authority over the organization, leadership, and administration of the DOC.[4]

[4] The Legislature's Handbook on Alaska State Government likewise describes the Governor as the State's chief executive and explains that the heads of principal departments serve under the Governor's supervision and direction. *See* State of Alaska Legislative Affairs Agency,

The Alaska Supreme Court has interpreted these provisions as establishing a unified executive in which principal departments exercise executive authority subject to the Governor's constitutional power—not independently of it. Construing Article III, section 24, the court explained in *Aspen Exploration Corp. v. Sheffield* that "[t]he governor is the supervisor of all state executive departments" and that each department and its commissioner are therefore "under the direct supervision of the governor." 739 P.2d 150, 154 (Alaska 1987). Applying that principle, the court held that the Governor could direct the Commissioner of Natural Resources to reject the plaintiff's mineral lease applications notwithstanding the Commissioner's statutory authority over the Department, concluding that doing so was "well within the governor's supervisory authority." *Id.* at 151–52, 155. More recently, the Alaska Supreme Court reiterated that "a governor is the head of the executive branch," that principal department heads "are appointed by, serve at the pleasure of, and act under the authority of the governor," and that, as

*Handbook on Alaska State Government* 10 (2025), available at https://perma.cc/6BKA-SLCM ("As the chief executive officer of state government, the Governor must supervise each principal department and has the responsibility of changing the organization or reassigning functions for efficient administration of the executive branch.").

such, they have "no authority independent of the governor's executive branch authority." *Taylor v. Alaska Legislative Affairs Agency*, 529 P.3d 1146, 1155–56 (Alaska 2023) (discussing the attorney general).

These decisions confirm that the Governor's authority over the statewide administration of DOC is "fairly direct" as a matter of law. In Alaska's constitutional structure, the Governor's supervisory authority extends well beyond "a generalized duty to enforce state law or general supervisory power." *Mecinas*, 30 F.4th at 903–04 (quoting *Wasden*, 376 F.3d at 919). The Alaska Supreme Court has made clear that the governor's authority over Commissioner Winkelman and Director Welch is "***direct***" and "***unimpaired***," *Aspen Expl. Corp.*, 739 P.2d at 160 (emphasis added) ("[W]hile engaged in the supervision of cabinet and sub-cabinet officers, the governor must feel unimpaired to direct them in the way he determines best, since he is ultimately responsible for the actions of those he appoints."), and that the heads of the principal departments have "***no authority***" independent of the executive in the first instance, *Taylor*, 529 P.3d at 1155–56 (emphasis added).

The Governor emphasizes statutes directing the DOC Commissioner to "establish, maintain, operate, and control correctional

facilities" and to provide prisoners with necessary medical services. OB 11 (citing Alaska Stat. §§ 33.30.011(a)(1), (3)(B), (4)(A), 44.28.010). But those statutes prescribe the Commissioner's operational responsibilities as the head of the Department. They do not establish independent authority, remove DOC from the Governor's control, or otherwise alter the constitutional allocation of executive authority recognized by the Alaska Supreme Court. *See Taylor*, 529 P.3d at 1155–56 (Although "[i]t is commonplace" that "commissioners[] will have specific statutory authority" to act, in Alaska, "[a]t the end of the day, the authority of an unelected [department head] to represent the State derives from the governor's constitutionally inherent executive branch authority, and further legislatively created executive branch authority, to bring actions on behalf of the State."). Ultimately, commissioners "serve[] at the pleasure and direction of the governor." *Id.* at 1156.

Alaska's longstanding executive practice confirms that allocation of authority. For more than four decades, Alaska governors have repeatedly exercised their constitutional authority to reorganize the Department, direct statewide correctional policy, and order statewide prison health care initiatives. For example, in 1983, acting expressly under article III,

sections 1, 23, and 24 of the Alaska Constitution, former Governor Bill Sheffield issued Administrative Order No. 77 "in the interest of the efficient administration of state government," establishing the Office of the Deputy Commissioner of Adult Corrections, directing delegation of statutory and regulatory authority over adult corrections, and providing that the Deputy Commissioner would report directly to the Governor with cabinet-level status. Admin. Order No. 77 (July 12, 1983), available at https://perma.cc/MCB8-94JH. And in 2003, then-Governor Frank Murkowski reorganized the Department's operations through Administrative Order No. 207 by restructuring reporting relationships within the Department, transferring the prisoner health care unit, directing new management structures, and requiring organizational changes "to streamline operations, realize efficiencies, and to clarify the chain of command." Admin. Order No. 207 (Jan. 22, 2003), available at https://perma.cc/CG8Q-BHH4. Statewide DOC ***operations*** are within the Governor's purview.

Governors have likewise exercised authority over statewide correctional ***policy***. In 1993, former Governor Walter Hickel established the Governor's Criminal Justice Working Group because "[t]he highly

unified and interrelated nature of Alaska's criminal justice system makes it necessary and appropriate that all components of the system coordinate their policy and budgetary planning." Admin. Order No. 138 (Sept. 1, 1993), available at https://perma.cc/BP93-7BZB. The Working Group was charged with recommending criminal justice policy to the Governor, advising him regarding operational and fiscal impacts, and coordinating implementation of statewide policies, with the DOC Commissioner serving as one of its executive members. *Id.*

Most recently, in 2017, former Governor Bill Walker exercised gubernatorial authority in the specific area of the Department's ***prison health care system***. Administrative Order No. 283, issued pursuant to article III, sections 1 and 24, directed executive departments—including the Department of Corrections—to undertake coordinated statewide action addressing Alaska's opioid epidemic. Admin. Order No. 283 (Feb. 16, 2017), available at https://perma.cc/AWX2-AGX4. The Order specifically required the DOC to "develop a program to provide medically-assisted treatment" for incarcerated persons upon release from custody and to coordinate that program with the Department of Health and Social Services. *Id.* Governor Walker also exercised similar authority two years

earlier, when he directed a statewide administrative review of the Department's prison health care system. *See* ER_15 (Compl. ¶ 4(c)). Following multiple deaths in DOC custody, he appointed a Special Assistant to conduct a comprehensive review identifying systemic deficiencies in medical and mental health care and recommending statewide executive reforms. ER_15.

These prior executive actions demonstrate how Alaska's constitutional allocation of executive authority has historically been understood and implemented by successive governors of both parties. They illuminate the scope of the Governor's constitutional authority—most pointedly, that it extends to the DOC's operations, statewide policy, and administration of prison health care—whether or not Governor Dunleavy has chosen to exercise that authority here in the manner Plaintiffs contend federal law requires.

Together, Alaska's constitutional text, jurisprudence, and the State's longstanding executive practice demonstrate that Alaska law assigns the Governor authority over the statewide administration of the DOC. That allocation of authority includes "fairly direct" authority over

the Department's administration of prison health care and supplies the requisite connection to the governmental conduct challenged here.

### D. Governor Dunleavy Is a Proper Defendant Under *Ex parte Young*

To recap: Alaska law assigns Governor Dunleavy "fairly direct" constitutional powers and duties over DOC, including its constitutionally required prison health care system. And the Complaint alleges that Governor Dunleavy has failed to exercise his constitutional powers and duties in a manner consistent with the Eighth and Fourteenth Amendments. This satisfies *Ex parte Young*'s connection requirement.

This Court's precedents point to the same conclusion. In *Eu*, the Court held that the connection inquiry turns on the defendant official's role in implementing the challenged governmental conduct, even where, as here, the challenged action "is simply not the type . . . that gives rise to enforcement proceedings." 979 F.2d at 704. In *Wasden*, the Court held that the requisite connection exists even when another official exercises more immediate operational responsibility over the challenged conduct. 376 F.3d at 919–20. And in *Mecinas*, the Court held that the "modest requirement [was] far exceeded" where the Secretary of State exercised

authority over the statewide election administration by promulgating the departmental policy governing ballot design. 30 F.4th at 903–04.

Other circuits have held similarly. *See, e.g.*, *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988) (holding the Georgia Governor to be a proper defendant in a constitutional challenge to the statewide administration of indigent-defense services because he possessed state constitutional and statutory responsibilities bearing on that system, and explaining that "[p]ersonal action by defendants individually is not a necessary condition of injunctive relief"; rather, it is sufficient that the official, "by virtue of his office," has "some connection" with the alleged constitutional violation (quoting *Ex parte Young*, 209 U.S. at 157)); *Kitchen v. Herbert*, 755 F.3d 1193, 1201–04 (10th Cir. 2014) (holding Utah's Governor a proper defendant because state law gave him authority to ensure statewide compliance with Utah's marriage laws); *Jackson v. Wright*, 82 F.4th 362, 367–68 (5th Cir. 2023) (holding that university regents were proper defendants because state law gave them direct governing authority over the officials allegedly committing the ongoing constitutional violation); *Eaves v. Polis*, 167 F.4th 1304, 1314–15 (10th Cir. 2026) (holding Colorado's Governor was a proper defendant

under *Ex parte Young* because Colorado law gave him "final authority" over the Colorado Department of Corrections and the complaint plausibly alleged he exercised that authority in connection with the challenged policies governing prisoners' religious exercise).

The district court's holding as to Governor Dunleavy is consistent with these precedents. Like the secretary of state in *Mecinas* and the governor in *Eaves*, for example, Governor Dunleavy possesses constitutional and statutory authority to appoint and remove the Department's leadership, reorganize its executive functions, ensure its compliance with constitutional mandates, direct the official actions of principal department heads, and direct its statewide policy and administration. *Id.*; *Aspen Expl. Corp.*, 739 P.2d at 154–55. Those are precisely the kinds of powers that establish the requisite connection under *Ex parte Young*. *See Mecinas*, 30 F.4th at 903–04; *Eaves*, 167 F.4th at 1314–15. Alaska's longstanding executive practice confirms that successive governors have understood and exercised those constitutional powers by reorganizing the Department, directing statewide correctional policy, and ordering systemwide administrative and health-care initiatives. *See* Admin. Order Nos. 77, 138, 207, 283, *supra*, at 33–36.

Those powers and duties more than satisfy the requirement that the defendant official bear a "fairly direct" connection to the challenged governmental conduct.

This conclusion accords with decades of statewide prison-conditions cases in this Circuit in which governors and senior corrections officials have jointly defended challenges to the administration of statewide correctional systems. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493 (2011); *Coleman v. Newsom*, 131 F.4th 948 (9th Cir. 2025); *Valdivia v. Schwarzenegger*, 599 F.3d 984 (9th Cir. 2010); *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005); *Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997); *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993) (en banc); *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992); *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985). While those cases did not expressly analyze the Governor's status under *Ex parte Young*, they reflect a longstanding practice of litigating statewide correctional-system challenges against both governors and senior corrections officials.

The Governor's principal authorities are consistent but distinguishable. OB 10–20. For example, in *Confederated Tribes & Bands*

*of Yakama Indian Nation v. Locke*, the Ninth Circuit held that Washington's Governor lacked the requisite connection to the challenged operation of the state lottery because Washington law placed the lottery in a separate state agency "operated by an independent Commission," and "[n]owhere in these statutes" was the Governor assigned responsibility for operating the lottery or determining where tickets would be sold. 176 F.3d 467, 469–70 (9th Cir. 1999). No comparable separation of authority exists here. The challenged governmental conduct is carried out through DOC—a "principal department" that Alaska's Constitution places under the Governor's "direct" and "unimpaired" supervision, *Aspen Expl. Corp.*, 739 P.2d at 160, and whose Commissioner commands "no authority" independent of the Governor's authority, *Taylor*, 529 P.3d at 1155–56. *See also* Alaska Const. art. III, §§ 24–25.

In *Association des Éleveurs de Canards et d'Oies du Québec v. Harris*, plaintiffs challenged California's prohibition on the sale of foie gras produced by force-feeding birds. 729 F.3d 937, 941 (9th Cir. 2013). The California Governor was dismissed because his "only connection" to the challenged statute was his "general duty" to enforce California law.

*Id.* at 943. Likewise, in *Los Angeles Branch NAACP v. Los Angeles Unified School District*, the Court concluded that California law assigned responsibility for the challenged school-desegregation policies to the Superintendent of Public Instruction and the State Board of Education, not to the Governor. 714 F.2d 946, 952–53 (9th Cir. 1983). The challenged conduct there was the operation of local school districts and implementation of school-desegregation policy, and the Court concluded "California law d[id] not allocate to the Governor a role in combating racial school segregation," leaving the Governor with only general budgetary and appointment responsibilities in that area. *Id.* at 953. Here, by contrast, Alaska law assigns Governor Dunleavy direct authority over the challenged governmental conduct through multiple constitutional provisions, as interpreted by the Alaska Supreme Court and confirmed by longstanding executive practice. The scope of his authority over operations, statewide policy, and prison health care itself is far more specific than a "general duty" to enforce state law.

And in *Forward*, this Court held that neither the complaint nor state law connected the Secretary of the California Department of Corrections and Rehabilitation or the Director of the California

Department of General Services to the challenged hazardous-waste management practices at state correctional facilities. 178 F.4th at 473–75. The complaint did not allege that those officials exercised authority over hazardous-waste management, and the relevant statutes assigned them no such authority. *Id.*; *accord Nat'l Audubon Soc'y*, 307 F.3d at 847 (similarly dismissing the Governor and Secretary of Resources of California where there was "no showing that they have the requisite enforcement connection"). Indeed, the Court emphasized that "[n]either Defendants' roles nor their particular actions subject them to this suit." *Forward*, 178 F.4th at 473. Here, by contrast, both do. Alaska law assigns Governor Dunleavy authority over the statewide administration of the Department of Corrections, and the Complaint alleges that, despite longstanding notice of systemic constitutional deficiencies, he failed to exercise that authority to remedy them.[5] Taken together, these

[5] Nor do the Governor's out-of-circuit cases support his position. Each involves different governmental conduct, different allocations of authority, and the laws of different states. *See Shell Oil Co. v. Noel*, 608 F.2d 208, 213 (1st Cir. 1979) (governor and attorney general were not proper defendants where they "disclaim[ed] any authority" to enforce the challenged statute such that "no actual controversy" existed concerning enforcement); *1st Westco Corp. v. School District of Philadelphia*, 6 F.3d 108, 113–14 (3d Cir. 1993) (Pennsylvania law assigned responsibility for

precedents simply confirm that *Ex parte Young* turns on the authority state law assigns over the challenged governmental conduct. Because Alaska law assigns Governor Dunleavy "fairly direct" authority over the conduct challenged here, he is a proper defendant.

The Governor separately argues that an injunction against him would not redress Plaintiffs' injuries because only the Commissioner and Director administer prison health care. OB 20–22. But asking "whether

---

challenged school-construction requirements to local school officials, not the Attorney General or Secretary of Education); *Doyle v. Hogan*, 1 F.4th 249, 253–57 (4th Cir. 2021) (Maryland law assigned enforcement of challenged statute to independent licensing boards, not the Governor); *United States v. Abbott*, 85 F.4th 328, 334–35 (5th Cir. 2023) (Governor was not a proper defendant because the challenged executive order assigned enforcement exclusively to the Texas Department of Public Safety, and no other law assigned the Governor responsibility for enforcing it); *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416–17 (6th Cir. 1996) ("Ohio law delegate[d] the enforcement of the challenged statutes to local prosecutors, not the Attorney General."). In each case, the court looked to state law to determine which officials possessed authority over the challenged governmental conduct and dismissed the governor or other state official only after concluding that state law assigned that authority elsewhere—or, in *Shell Oil*, that the officials disclaimed any authority to enforce the challenged statute. By contrast, *Air Evac EMS, Inc. v. Texas, Department of Insurance, Division of Workers' Compensation*, applied the same framework to hold that the Texas Commissioners of Insurance and Workers' Compensation were proper defendants because Texas law assigned them "pervasive" authority to implement and enforce the challenged regulatory scheme. 851 F.3d 507, 519 (5th Cir. 2017).

[] officials are, in their official capacities, proper defendants in [a] suit is really the common denominator of two separate inquiries"—Article III justiciability and *Ex parte Young*. *Wasden*, 376 F.3d at 919; *accord Mecinas*, 30 F.4th at 903. Because Alaska law assigns Governor Dunleavy constitutional authority over the statewide administration of DOC, an injunction directing him to exercise that authority would provide meaningful prospective relief. According to the Complaint, such an injunction could direct Governor Dunleavy, together with Commissioner Winkelman and Director Welch, to develop and implement a statewide remedial plan governing the provision of prison health care throughout the Department—the very type of systemwide executive action Alaska governors have repeatedly directed. *See* ER_76–78 (Compl. ¶ 280(d)); Admin. Order Nos. 77, 138, 207, 283, *supra*, at 33–36. The Governor's contrary argument rises or falls with his mistaken premise that Alaska law assigns him no constitutional authority to direct that relief.

Governor Dunleavy is a proper defendant under *Ex parte Young*. Alaska law assigns him authority over the challenged governmental conduct sufficient to satisfy *Ex parte Young*'s connection requirement; in

Alaska's constitutional structure, "the buck stops" with the Governor. *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1135 (9th Cir. 2012). The district court thus correctly denied his motion to dismiss.

## II. THE GOVERNOR'S ARGUMENTS MISSTATE THE *EX PARTE YOUNG* INQUIRY

In an effort to sidestep *Ex parte Young*, the Governor attempts to reframe the relevant question. Rather than examining Alaska's constitutional allocation of authority as a whole, the Governor evaluates individual sources of constitutional authority in isolation and asks whether each, standing alone, establishes the requisite connection. Next, instead of asking whether Alaska law assigns him the requisite connection to the challenged governmental conduct, he asks whether another official exercises ***more*** authority—and implies that he cannot be sued if he can find one. Neither is the question presented by *Ex parte Young*. Once the challenged governmental conduct is properly identified, and Alaska's constitutional allocation of authority is examined as a whole, the Governor's remaining arguments fail.

### A. The Governor Improperly Fragments the *Ex parte Young* Analysis

The Governor's principal argument begins in the wrong place. Rather than first identifying the governmental conduct Plaintiffs

challenge and then determining whether Alaska law assigns him a sufficiently direct relationship to that conduct, the Governor isolates four of his constitutional powers—his authority to appoint the Commissioner and propose the Department's budget, faithfully execute the laws, supervise executive departments, and reorganize executive functions—and argues that each, considered in isolation, is too general to establish the requisite connection to the statewide administration of prison health care. *See* OB 12–20.

But *Ex parte Young* does not ask whether a single constitutional provision, standing alone, connects the defendant official to the challenged governmental conduct. It simply asks whether state law assigns the defendant "a relevant role that goes beyond 'a generalized duty to enforce state laws or general supervisory power.'" *Labrador*, 122 F.4th at 842 (quoting *Mecinas*, 30 F.4th at 903–04).

Plaintiffs therefore do not rely on the Governor's appointment power alone, his duty to faithfully execute the laws alone, his supervisory authority alone, or his authority to reorganize executive departments alone. They rely on Alaska law's allocation of those constitutional powers and duties collectively over the statewide administration of DOC. Alaska

Const. art. III, §§ 16, 23–25. Successive governors have exercised those powers in a "fairly direct" manner—reorganizing the Department, directing statewide correctional policy, and mandating systemwide health care initiatives through gubernatorial Administrative Orders. *See* Admin. Order Nos. 77, 138, 207, 283, *supra*, at 33–36. Taken together, Alaska's Constitution, jurisprudence, and longstanding executive practice point to a single conclusion: Alaska law assigns the Governor constitutional authority over the statewide administration of the Department of Corrections. That is the focus of *Ex parte Young*.

### B. *Ex parte Young* Does Not Require Plaintiffs To Sue Only the Official With the Most Immediate Operational Authority

The Governor next asks this Court to ignore binding precedent and adopt an exclusivity rule under which only the official or officials exercising the most immediate operational authority over the challenged governmental conduct may be sued. Governor Dunleavy argues that since Commissioner Winkelman and Director Welch exercise day-to-day responsibility for administering prison health care, they are the only proper defendants. OB 10–11, 21–22. But the statutes the Governor cites prescribe the DOC Commissioner's operational responsibilities; they do

not make the Commissioner the sole state official with constitutional authority over the Department. Indeed, the Alaska Supreme Court has held that a commissioner's statutory authority to administer a principal department does not negate the Governor's constitutional authority to direct that commissioner's official actions. *See Aspen Expl. Corp.*, 739 P.2d at 154–55; *Taylor*, 529 P.3d at 1155.

Nor has the Supreme Court or this Court adopted such a rule. To the contrary, "[t]he connection requirement is 'modest.'" *Labrador*, 122 F.4th at 842 (quoting *Mecinas*, 30 F.4th at 904). It requires only that state law assign the defendant "a relevant role that goes beyond 'a generalized duty to enforce state laws or general supervisory power.'" *Id.* (quoting *Mecinas*, 30 F.4th at 903–04). Nothing in that standard suggests that an official otherwise satisfying *Ex parte Young* ceases to be a proper defendant merely because another official exercises ***more*** immediate operational authority. *See Wasden*, 376 F.3d at 919–20.[6] That premise is

[6] Other courts have likewise rejected the premise that only the official exercising the most immediate operational authority may be sued. *See Kitchen v. Herbert*, 755 F.3d at 1203–04 (holding Utah's Governor and Attorney General proper defendants in a constitutional challenge to statewide administration of its marriage laws, notwithstanding the county clerk's direct responsibility for issuing marriage licenses, because

distinct from cases like *Locke*, where state law assigned authority over the challenged governmental conduct to an independent agency rather than the defendant official. 176 F.3d at 469. The opposite is true here.

The Governor identifies no decision—and Plaintiffs have found none—holding that an official who otherwise satisfies *Ex parte Young* ceases to be a proper defendant merely because another official or officials exercise ***more*** immediate operational authority. This Court's precedents ask only whether each defendant official possesses the requisite connection under state law—not whether another official possesses a greater one. The Governor's proposed exclusivity rule would transform the *Ex parte Young* inquiry from one focused on state-law authority into one focused on operational hierarchy. This Court should

---

each independently possessed a sufficient legal connection to the challenged governmental conduct under state law); *Jackson v. Wright*, 82 F.4th 362, 367–68 (5th Cir. 2023) (holding university board members were proper defendants because they possessed "direct governing authority" over the officials allegedly committing the ongoing constitutional violation and authority to "countermand" those officials' decisions). Both decisions reject the premise that the official exercising the most immediate operational responsibility necessarily displaces superior officials possessing an independent legal connection to the challenged governmental conduct.

decline that invitation to "disturb the careful balance on which *Ex parte Young* rests by crafting a new test." *Forward*, 178 F.4th at 475.

## III. THE COMPLAINT PLAUSIBLY ALLEGES THE MODEST CONNECTION *EX PARTE YOUNG* REQUIRES

Even if the Court declines to decide the full extent of Governor Dunleavy's authority over the Department in this interlocutory appeal, the Court should affirm because the Complaint plausibly alleges the "modest" connection *Ex parte Young* requires. *Mecinas*, 30 F.4th at 904. At the pleading stage, Plaintiffs need only allege—not prove—the facts establishing that connection. *See Columbia Basin*, 77 F.4th at 1221 ("For a suit to proceed under *Ex parte Young*, the plaintiff must allege—not prove—an ongoing violation of federal law for which she seeks prospective injunctive relief."); *Eaves*, 167 F.4th at 1314–15 (affirming denial of the Governor of Colorado's Rule 12 motion because both "Colorado law and the factual allegations of the [Amended Complaint], accepted as true," established the connection required by *Ex parte Young*). The Complaint plainly clears that bar.

Plaintiffs allege that although Governor Dunleavy is responsible for the policy oversight and organization of the DOC—and despite repeated notice of systemic constitutional deficiencies in the Department's prison

health care system—he has failed to exercise his authority to remedy the ongoing violations of Plaintiffs' Eighth and Fourteenth Amendment rights. More specifically, the Complaint alleges that Governor Dunleavy "is responsible for the oversight and operation of DOC, including appointing the Commissioner of DOC, and proposing the budget for DOC," and that he "bears ultimate responsibility for providing all people in DOC custody with constitutional conditions of confinement, including adequate health care." ER_39–40 (Compl. ¶ 101).

The Complaint also alleges that Defendants—including Governor Dunleavy—have long been on notice of the systemic deficiencies in the Department's prison health care system. Plaintiffs allege that, beginning in 2008, the Alaska State Ombudsman repeatedly identified deficiencies in DOC health care, concluding that "[m]any of the same systemic problems continue today." ER_15 (Compl. ¶ 4(e)). They further allege that a 2010 report prepared by DOC officials and the ACLU of Alaska identified "serious deficiencies in medical care," including "inadequate staffing," "lack of prompt or adequate treatment," and "under-treatment of mental illness." ER_16 (Compl. ¶ 4(g)). Following multiple deaths in custody, Governor Walker appointed a Special Assistant in 2015 to

conduct an administrative review of DOC, which likewise identified "multiple failures of medical and mental health care" and recommended statewide reforms. ER_15 (Compl. ¶ 4(c)). Finally, Plaintiffs allege that Defendants have continued to receive "hundreds of complaints about DOC's failure to provide adequate health care" while deaths in DOC custody have reached "an all-time high in the last few years." ER_14–15 (Compl. ¶ 4(a), (d)). Yet the Governor and his co-defendants "have failed to remedy" the challenged conditions. ER_14 (Compl. ¶ 4). Whether those allegations ultimately prove correct is a question for a later stage of the litigation. At the pleading stage, however, they must be accepted as true and all reasonable inferences drawn in Plaintiffs' favor. *See Mecinas*, 30 F.4th at 896; *Columbia Basin*, 77 F.4th at 1221.

Applying this standard, the Complaint plausibly alleges that Governor Dunleavy failed to exercise authority that Alaska governors have repeatedly used to improve the administration of the Department. Those allegations are reinforced by Alaska governors' longstanding exercise of statewide supervisory authority over the DOC through executive orders reorganizing its leadership, directing statewide correctional policy, addressing prison health care through statewide

initiatives, and, in Governor Walker's case, commissioning an executive review following multiple deaths in custody. *See* Admin. Order Nos. 77, 138, 207, 283, *supra*, at 33–36; ER_15 (Compl. ¶ 4(c)).

The Governor's appeal asks the Court to disregard those allegations as legally irrelevant because, in his view, he lacked sufficient authority to respond to them. OB 11–20. But neither *Ex parte Young* nor Rule 12 requires that result—especially where the Governor's position runs headlong into the Complaint's contrary factual allegations. *Compare* OB 6 ("Plaintiffs have made no specific factual allegations that tie the Governor to the administration of correctional facilities."), *with* ER_39–40 (Compl. ¶ 101) (alleging that Governor Dunleavy "is responsible for the oversight and operation of DOC" and "bears ultimate responsibility for providing all people in DOC custody with constitutional conditions of confinement, including adequate health care"), *and* ER_15 (Compl. ¶ 4(c)) (alleging that Governor Walker "appointed" a Special Assistant to conduct an "administrative review of DOC" that identified "multiple failures of medical and mental health care" and recommended statewide reforms); *see also, e.g.*, Admin. Order No. 283, *supra*, at 35–36 (directing the DOC to "develop a program to provide medically-assisted treatment"

for incarcerated persons upon release from custody and to coordinate that program with the Department of Health and Social Services).

The Governor's argument is also difficult to reconcile with *Eaves*. There, the Colorado Governor argued that he lacked the requisite connection to prison regulations governing prisoners' religious exercise because the Colorado Department of Corrections administered and enforced those policies. 167 F.4th at 1314–15. The Tenth Circuit rejected that argument by looking first to Colorado law—which gave the Governor "final authority" over the Department—and then to the complaint's factual allegations, accepted as true, that the Governor had participated in creating and revising the challenged prison policies. *Id.* at 1315. Those allegations, the court explained, could not be "squared with" the Governor's assertion that he lacked the requisite connection. *Id.* The same is true here.

Accordingly, even if the Court declines to decide whether Alaska's constitutional allocation of executive authority categorically satisfies *Ex parte Young* in every action challenging the Department, affirmance is required. Plaintiffs have plausibly alleged the "modest" connection *Ex parte Young* demands. *See Mecinas*, 30 F.4th at 904. The district court

thus correctly concluded that Governor Dunleavy "has a relevant role in the administration of the Alaska prison system that goes beyond a generalized duty to enforce the state law." ER_10–11.

## CONCLUSION

The district court's judgment should be affirmed.

Dated: July 22, 2026

Respectfully Submitted,

*/s/ Nicholas Casmier Anway*

Nicholas Casmier Anway
John A. Freedman
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
*nicholas.casmier.anway@arnoldporter.com*
(202) 942-5000

David C. Fathi
ACLU National Prison Project
915 15th St., N.W., 7th Floor
Washington, D.C. 20005
*dfathi@aclu.org*
(202) 393-4930

Corene T. Kendrick
ACLU National Prison Project
425 California St., Ste. 700
San Francisco, CA 94104
*ckendrick@aclu.org*
(202) 393-4930

Susan Orlansky
ACLU of Alaska Foundation
1057 W. Fireweed Lane, Ste. 207
Anchorage, AK 99503
*sorlansky@acluak.org*
(907) 258-0044

*Counsel for Plaintiffs-Appellees*

**STATEMENT OF RELATED CASES**

I certify, pursuant to Circuit Rule 28-2.6, that the undersigned counsel is unaware of any related cases currently pending in this Court.

Dated: July 22, 2026

*/s/ Nicholas Casmier Anway*
Nicholas Casmier Anway

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the foregoing brief contains 10,388 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that the document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, in 14-point Century Schoolbook font.

Dated: July 22, 2026

*/s/ Nicholas Casmier Anway*
Nicholas Casmier Anway

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

On July 22, 2026, I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and will be served by the appellate ACMS system.

Dated: July 22, 2026

*/s/ Nicholas Casmier Anway*
Nicholas Casmier Anway

*Counsel for Plaintiffs-Appellees*